RECEIVED
JAN 25 2022
AT 8:30____M
WILLIAM T. WALSH
CLERK

Tremayne Durham
#647007/ OS01613467
New Jersey State Prison
P.O. Box 861
Trenton, New Jersey 08625
Appearing PRO-SE

**UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF NEW JERSEY**

| | | |
|---|---|---|
| TRENAYNE DURHAM, | : | CIVIL ACTION NO. |
| PLAINTIFF | : | 3:21-cv-16723 (MAS) (TJB) |
| | : | |
| V. | : | |
| NEW JERSEY STATE PRI | : | **AMENDED COMPLAINT** |
| SON | : | |
| A. EMRICH, ASSOCIATE | : | |
| ADMINISTRATOR | : | |
| L. JOVANOVIC, O.F.C. | : | |
| Z. GOODWIN, O.F.C. | : | |
| J. AKTURK, O.F.C | : | |
| J. ESQUILAN, O.F.C. | : | |
| K. KUCINSKI, O.F.C. | : | |
| | : | |
| DEFENDANTS | : | |

**INTRODUCTION**

COMES NOW, Tremayne Durham, Plaintiff, Pro-S[e], in the above matter, and beseches this honourable Court to treat this instant cause liberally and afford it the principles of a pro-se litigant as established by the U.S. Supreme COurt in Haines v. Kerner, 404 US 51 SCT. 594, 30 L. ED 2d 652, and Estelle v. Gamble. 429 U.S, 106.

**COMPLAINT**

Tremayne Durham, Plaintif, Pro-Se, alleges and complains against Defendants, New Jersey State Prisonm, K. Kucinski, A. Emrich, L. Jovanovic, Z. Goodwin, J. Akturk, J. Esquilan

**JURISDICTION AND VENUE**

1. This is a 1983 action brought to redress the deprivation under the Civil Rights Act enacted by Congress to redress the deprivartion under colior of state law and Constitution of the United States. 42 U.S.C. § 1983, 42 USC § 1985 (2),(3), 1986, ADA/Rehabilitaion Act. This Court has original jurisdiction over Plaintiff's claims pursuant to 28 U.S.C. § 1331 and 1343 (a) (3). Jurisdiction over Plaintiff's claim for declatory relief can be found at 28 U.S.C. § 2201 and 2202. Jurisdiction over Plaintiff's claims for injunctive relief can be found at 28 U.S.C. 2283 and §2284, and Rule 65 of the Federal Rules of

Civil Procedure. Additionally this Court has supplemental jurisdiction over state claims under 28 U.S.C. § 1367.

2. **PREVIOUSLY DISMISSED ACTIONS**

Plaintiff has not had an action or appeal dismissed on three or more prior occaions on the grounds that the action or appeal was frivolous, maliciuous, or refused to state a claim upon which relief may be granted.

3. **PARTIES**

Plaintiff, TREMAYNE DURHAM, is a Oregon State prisoner convicted and sentenced by the State of Oregon and is confined as an out of state prisoner pursuant to the Out of State Compact Agreement Act (hereafter I.C.A.) with the New Jersey Department of Corrections at New Jersey State Prison. (Hereafter NJSP) At all times relevant to this complaint defendants were acting under color of stae of law.

3a. Defendant New Jersey State Prison (hereafter NJSP) is the entity during the time of the violations complained of. Defendant NJSP carries out its official business at the prisons business office which is, Third and Federal Street, Trenton, NJ 08625. Defendant NJSP is responsible for implementing rules, policy, procedure, operating practices, and has supervisory authority to modify, change, deny or approve as such in a consistent manner with the governing rules as defined in 10:A, state laws and the U.S. Constitution, as well as enforcing the same. Defendant NJSP has supervisory authority over A. Emrich,

K. Kucinski, L. Jovanovic, Z. Goodwin, J. Akturk, J. Esquilan and can correct their behavior in regard to 10:A, state laws, and the U.S. Constitution. Defendant NJSP is being sued in its individual and official capacity.

4. Defendant Amy Emrich, is the Associate Administrator at NJSP during the time of the violations complained of. Defendant A. Emrich carries out her official business at the prison's business office which is NJSP, Third and Federal Street, Trenton, NJ 08625. Defendant A. Emrich is responsible for implementing rules, policy, procedure, operating practices, and has supervisory authority to modify, change, deny or approve as such in a consistent manner with the governing rules as defined in 10:A, state laws and the U.S. Constitution, as well as enforcing the same. Defendant A. Emrich has supervisory authority over defendants: L. Jovanovic, Z. Goodwin, J. Akturk, J. Esquilan, K. Kucinski and can correct their behavior in regard to 10:A, state law, and the U.S. Constitution. Defendant A. Emrich is being sued in her individual and official capacity.

5. Defendant L. Jovanovic is a senior correctional officer at NJSP (Hereafter Jovanovic) during the violations complained of herein by Plaintiff. Defendant Jovanovic caries out his official duties at the prison's business address which is NJSP, Third and Federal Street, Trenton, NJ 08625. Defendant Jovanovic works on 2 left housing unit on first shift, and is responsoble for enforcingf rules, policy procedures, operating practices and rules governing 10:A, state laws and the U.S. Constitution. Defendant Jovanovic has knowledge of custodial operations on

2 left housing unit. Defendant Jovanovic is being sued in his individual and official capacity.

6. Defendant, Z.Goodwin is a senior corectional officer (Hereafter Goodwin)at N.J.S.P. during the violations complained of herein by Plaintiff. Defendant Goodwin carries out hisofficial duties at N.J.S.P. Third and Federal Street, Trenton NJ 08625. Derfendant Goodwin works on 2 left housing unit and is reaponsible for enforcing rules, policy procedyrem operating practices and rules governing 10:A, state laws and the U.S. Constitution. Defendant Goodwin has knowledge of custodial operations on 2 left housing unit. Defendant Goodwin is being sued in his individual and official capacity.

7.Defendant, J. Akturk is a senior correctional oficer (Hereafter Akturk) at N.J.S.P. during the violations cojplained of herein byPlaintiff. Defendant Akturk carries out her official duties at N.J.S.P, Third and Federal Street, Trenton, NJ 08625. Defendant Akturk works on 2 left housing unit and is responsible for enforcing rules, policy procedures, operating procedure. And is responsible for enforcing 10:A, state laws. and the U.S. Constitution. Defendant J. Akturk is being sued in her individual and official capacityl.

8. Defendant, J. Esquilan is a senior correctional officer (Hereafter Esquilan) at N.J.S.P. during the violations complained of herein by Plaintiff. Esquilan carries out his official duties at the prisons business office which is NJSP, Third and Federal Street, Trenton, NJ 08625. Defendant Esquilan is responsible for enforcing rules, policy and procedure, operating practices.

And is to enforce 10:A, state laws, and the U.S. Constitution. Defendant Esquilan is being sued in his individual and official capacity.

9. Defendant K. Kucinski, is a correctional officer at N.J.S.P. during the violations complained of herein by Plaintiff. (Hereafter Kucinski) Kucinski carries out his official duties at N.J.S.P. Third and Federal Street, Trenton, NJ 08625. Defendant Kucinski works in the north compound infirmary and is responsible for enforcing security, enforcing rules, policy and procedures, operating procedures. And is responsible for enforcing 10:A, state laws, and the U.S. Constitution. Defendant K. Kucinski is being sued in his individual and official capacity.

## FACTS

10. On 4/9/20 while plaintiff was on 2 left housing unit window adjacent to cell was broken and missing with blustery cold air coming into his cell. The window was approximately twelve feet away from his cell.

11. On 4/10/20 plaintiff asked c.o. Goodwin if he could close window and turn heat on. The temperature was approximately 42°. O.F.C. Goodwin said " I don't care you should'nt file grievances and complain I'll fix you for that nigger." (See Exhibits A,C,B-7)

12. 4/11/20 temperature was approximately 41° on 2 left and the same window was still broke and missing, blustery and extremely cold wind was coming directly into plaintiff's cell,

the heat was off. Plaintiff asked Jovanovic to please close the window and turn the heat on. Jovanovic responded "your an animal you write grievances and filed a complaint on my coworkers, fuck you nigger everybody will suffer because of you. Jovanovic has a pattern and practice of this behavior. (See Exhibits A-4, A-5, B-7)

13. On 4/13/20 window was still broke and missing with blustery cold air coming into plaintiffs cell. Temperature was approximately 43°. Plaintiff was extremely cold and shivering and lost sleep.

13a. Plaintiff alerted O.F.C. Akturk about the situation. She said I was tod you filed grievances I cant help you. SEE Exhibit A-5.

14. On 4/14/20 Plaintiff asked J. Akturk for fresh drinking water she said "no and another thing if you file any grievances against me or my co-workers on 2 left you will be a dead nigger".

14a. Plaintiff has previous pending lawsuits: DURHAM v. DAVIS et al, Case NO. 3:19-cv-19126 filed 10/19/19, DURHAM V. KELLEY et al, case no. 3:21-cv-04565 filed 2/27/21

15. Plaintiff previously filed several grievances prior to defendants retaliatory/racially discriminatory actions. Ref# NJSP 19021735, #NJSP19022740, Ref# NJSP 19038005 filed 11/19/19, Ref#NJSP 20000969 filed 1/9/20.

16. Upon information and belief NJSP policy is to turn on heat on housing units October 15 and turn heat off April 15...the range is 66°to 78°.

17. Due to the extreme cold combined with heat being turned

off and being denid access to extra blankets by previously mentioned officers plaintiff was shivering due to cold and lost sleep on the days alleged. Their is a pattern and pratice of this behavior. (See Exhibit B-7)

18. On 5/10/20 approximately 9:38 am O.F.C. Goodwin ransacked plaintiffs cell while on 2 left. Plaintiff's food and clothes and clearly marked legal mail was mixed together. Clearly marked legal mail and plaintiff's photos of family and friends, including deceased relative was shredded in toilet and other photos and clearly marked legal mail was stolen by Goodwin. Goodwin has a pattern and practice of this behavior. (See Exhibits A-2, C, C-1, A-9, A-10, C-4).

19. Plaintiff had original exhibits he planned to use in a civil suit under the First Amendment for having his clearly marked legal mail opened not in his presence. Their was approximately 3 pieces of mail, they are now gone forever. (See Exhibits A-9, A-10, A-2, C

20. Plaintiff's photos are of sentimental value and can't be replaced this has caused plaintiff extreme distress, some friends and family are deceased. (see Exhibit C-1)

21. On 5/11/20 Plaintiff told O.F.C. Goodwin about vermin; ants, roaches, waterbugs that was infested in his cell which was causing plaintiff to lose sleep and be greatly distressed. Goodwin said "there is nothing I can do" (See Exhibit B-3)

22. On 5/12/20 Plaintiff told Jovanovic about the infestation of roaches ants and waterbugs in his cell. Jovanovic laughed at plaintiff and walked away. The vermin caused Plaintiff to

lose sleep and be extremely distressed. (see Exhibit B-3)

23. On 7/24/20 at approximately 7:20 am Goodwin ransacked plaintiff's cell. Clearly marked legal mail and photos of family and friends in the toilet. Other photos and clearly marked legal mail was stolen by Goodwin. (see Exhibits A-2, A-4,C,C-1)

23a. Plaintiff filed claim form that was not answered.

24. On 8/28/20 Goodwin ransacked plaintiffs cell, clothes, food, clearly marked legal mail was in the toilet. Clearly marked legal mail and photos of family and friends stolen. (See Exhibit A-2, A-4, C)

25. Goodwin has a pattern and practice of this behavior.(see Exhibits A-6, A-7, A-8)

25a.nPer memo from the Corrections Ombudsman in part says "fans would be in use when their is a rise in temperarture"/ The days fans were used by the following defendants their wasn't a rise in temperature.(See Exhibit B)

26. On 10/19/20 Esquilan turned on large metal fan approximately five feet away, adjacent to plaintiff's cell and pointed directly at plaintiffs cell. The temperature was approximately 45° and windows were open throughout the unit and adjacent to plaintiff's cell, The heat was off. The noise from the fan caused plaintiff to lose sleep. Plaintiff alerted Eaquilan about the condition immediately but was ignored by Esquilan who walked away. (See Exhibits B,B-1,B-2)

26a. Esquilan has a pattern and practice of this behavior. (see Exhibit B-7)

27. On 10/23/20 Goodwin ransacked plaintiff's cell, clearly

marked legal mail and photos of family/friends. Photos of deceased family and clearly marked legal mail stolen. The rest were mixed up with food and inside the toilet shredded. (See Exhibit A-9, A-10, C, C-1, C-2a)

27a. Plaintiff submitted claim form on 10/23/20 but they were not answered. Plaintiff was told by Lt. Crawford via grievance to file a claim. Plaintiff has no available remedy or relief.( SEE Exhibits C-1, C-2a, E-1)

28.On 11/11/20 Esquilan opened window adjacent to plaintiff's cell while heat was off. Temperature approximately 45°. Plaintiff asked Esquilan if he could close window and also if he could get extra blankets. Esquilan said "you need to stop complaining monkey"

29. On 11/13/20 Temperature was approximately 46° plaintiff asked Jovanovic if he could close window adjacent to his cell due to blustery cold wind. (window appx. twelve feet away from plaintiffs cell) Plaintiff requested extra blankets and heat be turned on. Jovanovic told plaintiff "freeze you black bastard". Jovanovic has a pattern and practice of this behavior (SEE Exhibits A-5, B-7, B-8)

30. On 11/16/20 temperature was approximately 35° and windows open adjacent to plaintiff's cell. Plaintiff was shivering and heat was off. Plaintiff told both officers Goodwin and Jovanovic about closing window and having heat turned on and receiving extra blankets. Both officers denied plaintiffs request.

31. On 12/10/20 Jovanovic and Goodwin ordered Plaintiff out of his cell without sufficient clothing. Plaintiff's request

for sufficient clothing was denied by Jovanovic and Goodwin and plaintiff was sent to chapel rec. Temperature was approximately 30°. Plaintiff was extremely cold and shivering.

32. 12/18/20 Goodwin turned off heat at approximately 5:45 am, temperature approximately 25°. The cold wind cme directly into plaintiff's cell. Plaintiff requested Goodwin to put heat on and close windows.Goodwin laughed at Plaintiff and walked away.

32a. Goodwin has a pattern and practice of this behavior. (See Exhibit B-7, B-8)

33. On the same date previously mentioned plaintiff requested extra blankets from Goodwin. Goodwin told plaintiff "no". The cold caused plaintiff to shiver and lose sleep. (See Exhibit A)

34. On 12/21/20 Esquilan turned on large metal fan adjacent to plaintiff's cell. Temperature was approximately 29° at 8:45 am. The fan made excessive noise throughout the night. The heat was off, when plaintiff requested to Esquilan to have heat turned on Esquilan said "motherfuckering nigger stop writing grievances" and walked away. (See Exhibits B, B-1, B-2)

34a. Plaintiff filed grievance Ref# NJSP 20024060 on 6/19/20.

35. On 12/24/20 Temperature approximately 30° Esquilan turned on large metal fan and turned it towards plaintiff's cell approximately seven feet away. The large metal fan made excessive noise all day and night causeing plaintiff to lose sleep.

36. Esquilan has a pattern and practice of this behavior. (See Exhibit B-7)

37. On 12/29/20 Temperature approximately 31° Esquilan turned

on large metal fan whih made excessive noise. (Heat was turned off) Fan was approximately seven feet away adjacent from plaintiff's cell. Plaintiff lost sleep due to this. (See Exhibit B)

38. On 12/30/20 Temperature approximately 35° at approximately 4:45 pm Esquilan turned on large metal fan approximately seven feet away from plaintiff's cell. The fan was on all day and night which caused plaintiff to lose sleep due to noise from the fan. (See Exhibit B, B-1, B-2)

39. On 12/31/20 Plaintiff alerted Akturk in regard to ants, roaches and waterbugs in his cell. Nothing was ever done, no exterminator came to rectify vernmin issue. The excess vemin caused plaintiff to lose sleep and become extremely distressed. (See Exhibits B-3, C-6)

40. On 1/1/21 Temperature was extremely cold and large metal fan was on adjacent to plaintiff's cell causing excessive noise. Jovanovic was alerted to the issue of the fan making excessive noise and causing plaintiff to lose sleep. Jovanovic ignored plaintiff and walked away.

41. On 1/2/21 Jovanovic was alerted to large metal fan making excessive noise adjacent to his cell, approximately seven feet away. Jovanovic ignored plaintiff and walked away. (See Exhibit B)

42. On 1/3/21 Esquilan turned on large metal fan adjacent to plaintiffs cell that made excessive noise that caused plaintiff to lose sleep. Plaintiff alerted Esquilan who said "I dont care". (see Exhibit B)

43. On 1/4/21 temperature approximately 35°, large metal fans turned on by Esquilan that caused excessive noise and caused plaintiff to lose sleep. (see Exhibit B)

44. On 1/13/21 temperature approximately 30° Esquilan turned on large metal fan adjacent to plaintiff's cell, approximately seven feet away. Excessive noise was made by large metal fan all day and night and caused plaintiff to lose sleep. Esquilan has a pattern and practice of doing this. (SEE Exhibit B, B-7)

45. On 1/14/21 Large metal fan ws turned on by Esquilan. This was located approximately seven feet away adjacent to plaintiffs cell making excessive noise, the temperature was extremely cold. (se Exhibit B)

46. On 1/15/21 Jovanovic turned off heat and put on large metal fan which was adjacent to plaintiff's cell causing excessive noise. (See Exhibits B, B-7)

47. On 1/17/21 temperature approximately 39° and heat was off. Large metal fan on adjacent to plaintiff's cell approximately seven feet away from plaintiff's cell causing excessive noise. Plaintiff was shivering from the cold and lost sleep.

48. On 1/19/21 Heat turned off and large metal fan was on Esquilan alerted to issue of excessive noise and of plaintiff being extremely cold. Plaintiff was ignored by Esquilan. (See Exhibit B, B-7)

49. On 1/20/21 while plaintiff was in cell at approximately 9:02 am Jovanovic told plaintiff to strip (take off all his clothes) and to show him his open buttocks for a strip search.

Plaintiff complied, no supervisor was present this was not done in accordance with 10:A. Their was no legal justification for the strip search.

50. On 1/24/21 Large metal fan was on temperature was approximately 23°. Esquilan was alerted that plaintiff was extremely cold ant that fan was extremely noisy.

51. On 1/25/21 at 8:20 am Goodwin told plaintiff to strip for a strip search while plaintiff was in his cell defecating. Plaintiff complied their was no supervisor present and no justificaton for the search. This was in violation of 10:A (See Exhibit A-1, A-11)

52. On 1/30/21 temperature approximately 18° and heat off turned off by Goodwin. Plaintiff alerted Goodwin and Jovanovic about the extreme cold but was ignored. Plaintiff was shivering and extremely cold. These officers have a pattern and practice of this behavior. (See Exhibits B-7, B-8)

53. On 2/1/21 temperature approximately 31° heat was turned off by Goodwin, Jovanovic refused to intervene. Plaintiff was extremely cold and shivering.

54. On 2/4/21 Extremely cold in cell and heat was turned off by Jovanovic Akturk did'nt intervene. Goodwin was also on unit amd did'nt intervene.

55. On 2/5/21 temperature approximately 25° and heat turned off by Goodwin, Jovanovic did'nt intervene.

56. On 2/6/21 temperature approximately 38° heat was turned off at 5:45 am by Goodwin, Jovanovic did'nt intervene.

57. On 2/8/21 temperature 15° and heat turned off. Jovanovic

did'nt intervene when Goodwin took heat off. Plaintiff was extremely cold and shivering.

58. On 2/9/21 temperature 24° and heat off. Akturk and Jovanovic worked. They were both alerted to plaintiff being extremely cold and they ignored plaintiff.

58a. On 2/10/21 Akturk ransacked plaintiff's cell approximately 8:29 am property everywhere on floor and toilet, clearly marked legal mail and pictures of family/friends/pet destroyed.

59. On 2/10/21 Plaintiff was extremely cold in cell and heat turned off on unit. Jovanovic and Akturk worked and denied plaintiff's request to turn heat on.

60. On 2/11/21 temperature 26° amd heat turned off Jovanovic and Akturk alerted to plaintiff being extremely cold but was ignored.

61. On 2/12/21 temperature 20° at approximately 5:43am Goodwintook heat off, Jovanovic did'nt intervene.

62. On 2/13/21 at approximately 6:11 am heat was turned off by Goodwin, and Jovanovic did'nt intervene.

63. On 2/14/21 temperature 25° and heat was turned off. Akturk worked and was alerted to plaintiff's being extremely cold and she smiled and walked away.

64. On 2/16/21 Large metal fan on adjacent to plaintiff's cell was making excessive noise, temperature approximately 22° Jovanovic and Akturk worked and was alerted to excessive noise and cold and ignored plaintiff. (See Exhibit B)

65. On 2/20/21 it was extremely cold in plaintiff's cell and heat was off. Large metal fans were on making excessive noise.

This occured 5:47 am (See Exhibit B)

66. On 2/22/21 heat turned off, it was extremely cold and plaintiff was shivering. Goodwin and Akturk worked.

67. On 2/23/21 Plaintiff requested fresh drinking water from Jovanovic. Jovanovic said "drink the water out of your toilet monkey". The water in plaintiffs cell in his sink had a brownish color and a smell of rotten eggs. Plaintiff was denied fresh drinking water for approximately two weeks which made plaintiff sick. Jovanovic has a pattern and practice of this behavior. (See Exhibits A-2, B-4, B-6, C-4, C-5)

68. There is a water fountain located on the flats(bottom) of the unit on 2 left where all prisoners were allowed to drink fresh filtered water and to fill up bottles to last them for the next day.

69. On 2/25/21 Large metal fan on causing excessive noise adjacent to plaintiff's cell,located on wall approximately twelve feet away from plaintiff's cell mking excessive noise. Jovanovic and Akturk working,refused plaintiffs request to turn fan off.

70. On 2/27/21 Large metal fans mounted on wall and adjacent to plaintiff's cell was making excessive noise. Plaintiff alerted officers Goodwin and Jonavic to issue and was ignored.

71. On 3/2/21 Temperature was approximately 30 degrees, large meta fans were on adjacent to plaintiff's cell making excessive noise. Plaintiff alerted officers and was ignored. (See Exhibit B)

72. On 3/5/21 heat was turned of by officer Goodwin plaintiff was extremely cold and shivering.

73. On 3/6/21 heat was turned off by officer Goodwin, it was extremely cold and plaintiff was shivering.

74. On 3/16/21 Jovanovic refused to let plaintiff out for his medical pass at 8:45 am. When plaintiff inquired about his pass Jovanovic said "fuck you nigger". L. Jovanovic has a patttern and practice of this behavior. (See Exhibits C-4, C-5, A-8)

75. On 3/23/21 Akturk fabricated misconduct report against plaintiff. Akturk was alerted to conditions in cell and plaintiffs serious back condition on more than one occasion, on 4/13/20 was one occasion. (See Exhibits B-3, C-6)

75a. Plaintiff washes in his cell and tries to clean his cell by hand, moving his property, boxes exacerbates his present serious back condition but non the less plaintiff has tried with his disability and even though he has requested assistance this has been denied by Akturk, Goodwin, Jovanovic.(See Exhibit D-5)

75b. Plaintiff was never given a opportunity to rebutt the charges in the misbehavior report. The supervisor never held a conference and plaintiff never refused this due process. (See Exhibit C-6)

76. On 3/24/21 approximately 8:30 am Jovanovic refused to take plaintiffs legal mail which is supposed to be signed and processed by him. When plsintiff inquired as to why he would'nt take plaintiffs clearly marked legal mail Jovanovic said "thats not my problem nigger".

77. Jovanovic has a pattern and practice of this behavior. (SeeExhibits C-4, C-5)

78. On all dates alleged in regard to Plaintiff not having adequate heat, windows being opened in extremely cold temperatures, fans being on without justification, plaintiff alerted the previous named correctional officers that worked the unit but was either ignored or verbally assaulted. Plaintiff inquired about having extra blankets but was denied each time. On the previous mentioned dated plaintiff lost sleep and was extremely cold and waking up shivering. This caused plaintiff pain and extreme distress.

79. Plaintiff was denied access to the Jpay kiosk numerous times throughout the year especially between May 2020 to April 2021 by Jovanovic. The Jpay kiosk is used to send and receive emails, write inquiries and grievances, etc.

80. On 4/7/21 Plaintiff's toilet would'nt flush he alerted second shift correctional staff who told him to relay issue to first shift correctional staff which he did.

81. On 4/8/21 Plaintiff alerted J. Akturk about the toilet which had feces and urine filled to the top and spilling onto the floor the odor was extreme with the smell of urine and feces. Akturk said "I will think about it"

82. During that time plaintiff could'nt eat due to smell this caused him pain and great distress.

83. On 4/14/21 while plaintiff was in his cell he was having serious back pain and yelled out to officer L. Jovanovic and told him he was having serious back pain and needed medical assistance. (See Exhibits D-3, D-4, D-5)

84. L. Jovanovic responded "put it on the kiosk." Plaintiff

wan'nt allowed to use the kiosk at that time or on first shift.

85. The same day 4/14/21 Plaintiff yelled out to officer J. Akturk about his serious back condition and need for medical attention. (Se Exhibits D, D-3, D-4, D-5)

86. officer J. Akturk said "wait until later and put it on the kiosk", Plaintiff was never given access to the kiosk on first shift.

87. Later that morning Plaintiff fell in his cell due to serious back pain that cascaded down to his legs. Plaintiff fell in water that had urine and feces in it due to toilet that was'nt fixed. (See Exhibits D, D-1, D-2, D-2a, D-2b, D-3, D-4, D-5a, G, G-1)

88. Later on 4/14/21 on second shift plaintiff was still in serious back pain and was allowed to come out to use kiosk. Plaintiff fell again due to serious lower back pain that cascaded down to his legs. This caused plaintiff extreme pain and great distress. (See Exhibits G, G-1, D, D-1, D-2, D-2a, D2b, D-3, D-4)

88a. Emergency medical"code 53" was called and plaintiff was placed in wheelchair and admitted to the infirmary.

89. While in infirmary for several days plaintiff received medical attention and administered pain medication. (See Exhibits D, D-1, D-2, D-2a, D-2b)

90. On 4/15/21 correctional officer K. Kucinski who worked in the prison infirmary refused to take plaintiff's lights off in his cell when plaintiff requested them off. Kucinski said " the policy is lights stay on 24/7". Plaintiff could'nt sleep

and was under extreme distress from approximately 4/14/21 to 4/19/21.

91. On same day Plaintiff was told by K. Kucinski "you have nothing coming you wrote c.o.'s up on 2 left"

92. Plaintiff wrote a complaint to the Corrections Ombudsman approximately 4/9/21 prior to writing this complaint.

93. From approximately 4/14/21 to 4/19/21 Plaintiff was in a cell that was extremely filthy, feces, was packed inside of the toilet from not being cleaned. Their was also feces in the toilet from the adjacent cell (ping pong) toilet.

94. Plaintiff was in cell with stench of feces and urine. Staff that made rounds in plaintiffs' cell commented on stench but nothing was done.

95. Plaintiff was not given basic hygiene items such as toothpaste, toothbrush neither was he given any of his property.

96. When plaintiff inquired about the conditions in his cell Kucinski said "all cells were the same and that plaintiff would be leaving soom this is only temporary."

97. A. Emrich acquiesced to the behavior of Kucinski by refusing to correct his behavior. (Se Exhibit F)

98. On or about 4/19/21 plaintiff was discharged from the infirmary plaintiff was placed on 4 right which is double-lock (two man cell), plaintiff previously was in a single one man cell and never requested to be put in a double-lock cell with another inmate.

99.Upon information and belief plaintiff was placed in double-lock because of the prior incidents on 2 left housing unit which

he complained about and this was done in retaliation. Jovanovic Goodwin, Akturk, have a pattern and practice of placing inmates especially black inmates in double=lock who complain. (See Exhibit A-3)

100. Jovanovic, Godwin, Akturk, Esquilan, Kucinski, Emrich participated aided and encouraged abuse of plaintiff. (See Exhibits A, A-1, A-2, A-4, A-5, B-3)

101.

**EXHAUSTION OF ADMINISTRATIVE REMEDIES**

101. Plaintiff has exhausted all applicable administrative grievance and appeals pursuant to 42 U.S.C. § 1991 (e) (See Exhibits D-8, D-9, E, E-1, F, F-1, G, G-1)

102. Prior to filing this complaint about the practices, acts and failure to act, which resulted in Plaintiff's ADA/REHABILITATION, 4th, 14th, 8th, 1st Amendment Right's violations, when it is well established Law that defendants can not violate Plaintiff's Rights. Defendants knew or should have known that their actions described above were in direct violation of well established Court decisons designed to protect Plaintiff's rights under the Constitution of the United States.

103. Defendants actions as set forth in the Complaint and paragraphs above demonstarates defendant's arbitrary, capricious, malicious and intentional infringement upon Plaintiff's rights with reckless disrehgard for the consequences of their actions and/or inactions.

104. Plaintiff reasserts paragraphs 1 through 100 and states

defendants practices, acts and failure to act are in violation of clearly established Law. Abd known or should have been known to defendants divesting them of any shield of qualified immunity.

105. Plaintiff reasserts paragraphs 1 through 104 and relays same in regard to state tort claims of Intentional or Malicious Harm to Another, Aiding the Commission of Tort, Emergency Aid Not Given or Not Properly Given, Emotional Distress Intentionally Inflicted, Emotional Distress Negligently Inflicted. Defendants should be divested of any shield of qualified immunity.

**CAUSE OF ACTION I**

**VIOLATION OF PLAINTIFF"S EIGHT AMENDMENT RIGHT'S**

106. Plaintiff repeats and alleges paragraphs 1 through 105 if same has been set forth herein.

107. Defendant's L. Jovanovic, Z. Goodwin, J. Akturk, J. Esquilan violated Plaintiff's Eight Amendment Right to be free from cruel and unusual punishment by depriving Plaintiff of warmth by having heat turned off and windows open for months while on 2 left housing uni.

108. Jovanovic, Goodwin, Akturk, Esquilan violated Plaintiff's Eight Amendment Right to be free from cruel and unusual punishment by depriving him of sleep by having large metal fans on that made excessive noise for months while on 2 left housing unit.

109. Jovanovic, Goodwin, Akturk violated Plaintiff's Eight Amendment Right by not having exterminator rectify excessive vermin in plaintiffs cell while he was on 2 left houseing unit.

110. Jovnovic and Goodwin violated Plaintiffs Eight Amendment Right to be free from cruel and unusual punishment by strip searching plaintiff for no justifiable reason while plaintiff was on 2 left housing unit.

111. Jovanoic violated Plaintiff's Eight Amendment Right by denying him fresh drinking water.

112. Jovanovic and Akturk violated Plaintiff's Eight Amendment Right to be free from cruel and unusual punishment by denying him medical assistance while on 2 left housing unit.

113. Plaintiff was subject to a racially hostile environment which was pervasive by being called racial epithets and racially motivated discriminatory behavior by defendants Jovanovic, Goodwin, Akturk, Esquilan in violation of his Eight Amendment Right to be free from cruel and unusual punishment.

114. A. Emrich violated Plaintiff's Eight Amendment Right to be free from cruel and unusual punishment having prior knowledge plaintiff was injured due to his disability and should've been housed on a unit that could accomadate his disability. (See Exhibits D-6,D-7)

115. Kucinski violated Plaintiff's Eight Amendment Right to be free from cruel and unusual punishment by denying him sleep by having lights on while plaintiff was in infirmary from approximately 4/15/21 to 4/19/21.

116. K. Kucinski also denied Plaintiff access to hygiene items such as toothpaste, toothbrush and other hygiene items and his property from approximately 4/15/21 to 4/19/21.

117. K. Kucinski refused Plaintiff's request for a sanitary cell by having Plaintiff live in a filthy cell with feces crusted inside of toilet. And feces from adjacent toilt in adjacent cell perpetually in plaintiffs toilet (ping pong), which never was cleaned.

118. A. Emrich acquiesced to behavior of K. Kucinski by refusing to correct his behavior.

**CAUSE OF ACTION II**

**DELIBERATE INDIFFERENCE**

119. Plaintiff reallege and incorporates paragraphs 118a.

120. Defendants L. Jovanovic, Z. Goodwin, J. Akturk, J. Esquilan were deliberately indifferent by having knowledge plaintiff

was deprived of warmth by having heat turned off and windows open for months on 2 left housing unit.

121. Jovanovic, Goodwin, Akturk, Esquilan were deliberately indifferent by having knowledge plaintiff was denied of sleep by having large metal fans on that made excessive noise for months while on 2 left housnig unit.

122. Jovanovic, Goodwin, Akturk were deliberately indifferent by having knowledge of vermin infestation in plaintiff's cell and not rectifying this by an exterminator's assistance.

123. Jovanovic was deliberately indifferent by having knowlege that plaintiff needed fresh drinking water and denying him access to it.

124. Jovanovic and Goodwin were deliberately indifferent for strip searching plaintiff for no justifiable reason.

125. Jovanovic and Akturk were deliberately indifferent by having knowledge plaintiff requested medical assistance and denied medical assistancd to plaintiff resulting in injury.

126. Jovanovic, Goodwin, Akturk, Esquilan were deliberately indifferent subjecting plaintiff to a racially hostile enviroment that was pervasive.

127. A. Emrich was deliberately indifferent by having knowledge plaintiff was injured due to his disability and was'nt properly housed, having the authority to do so.

128. Kucinski was deliberately indifferent by having knowlege plaintiff couldnt sleep with lights on 24/7, and denying plaintiff access to hygiene items such as toothpast, toothbrush. And having plaintiff live in a filthy cell with feces crusted

iside of toilet bowl and ping pong toilet that was never cleaned.

129. Emrich was deliberately indifferent by refusing to correct kucinski's behavior.

**CAUSE OF ACTION III**

**VIOLATION OF PLAINTIFF'S FOURTEENTH AMENDMENT RIGHTS**

130. Plaintiff repeats and alleges paragraphs 1 through 129.131. Jovanovic, Goodwin Akturk, Esquilan violated Plaintiffs Fourteenth Amendment Right to Equal Protection by discriminating against him because of his race.

132. Plaintiff is black, a African American and was called racial epithets, denied fresh drinking water, denied access to exterminator, property was destroyed and stolen, denied warmth, denied sleep, denied medical attention by defendants (Jovanovic, Goodwin, Akturk, Esquilan)

132a. White prisoners on 2 left unit were given priority treatment.

133 Emrich discriminated against plaintiff by not having him properly housed for his disability,plaintiff is of a small class of prisoners who has a serious back condition takes pain medication and uses a cane and was injured in the past.

134. Kucinski discrimated against plaintiff in infirmary by denying him sleep by having lights on 24/7. Denying plaintiff hygiene items such as toothpaste, toothbrush, clean cell and toilet.

135. Upon information and belief other prisoners in infirmary were given property and hygiene items, etc.

**CAUSE OF ACTION IV**

**VIOLATION OF PLAINTIFF"S FOURTH AMENDMENT RIGHT**

136. Plaintiff reallege and incorporate by reference paraagraphs 1-135.

137. Jovanovic, Goodwin, Akturk violated Plaintiff's Fourth Amendment Right by ransacking, destroying, stealing plaintiff's property, in grievance plaintiff told to file a claim which was not answered. (See Exhibit E-1)

138. Jovanovic and Goodwin strip searched Plaintiff making him take his clothes off and reveal buttocks to them with no justification.

**CAUSE OF ACTION V**

**VIOLATION OF PLAINTIFF"S FIRST AMENDMENT RIGHT"S**

139. Plaintiff incorporates paragraphs 1 through 105 as though they were stated fully herein.

140. jovanovic, Goodwin, Akturk, Esquilan, Kucinski violated Plaintiff's First Amendment Right by retaliating against him for filing grievances and complaints.

141. Previously filed lawsuits: DURHAM v. DAVIS et al, No. 3:19-cv-19126 filed 10/19/19, DURHAM V. KELLEY et al, case no. 3:21-cv-04565 filed 2/27/21. (also grievances previously stated therein)

142. Plaintiff was subject to denial of warmth, sleep, vermin infestation, destruction and theft of property, medical assistance denied while on 2 left by Jovanovic and Akturk.

143. Jovanovic denied plaintiff fresh drinking water, refused

to process his clearly marked legal mail on various days. Jovanovic denied plaintiff access to the jpay kiosk, yard for months.

144. Goodwin denied Plaintiff access to the courts by destroying/stealing plaintiff's clearly marked legal mail that was needed for litigating a cvili action. The action was specifically in regard to plaintiff's clearly marked legal mail being opened not in his presence. All original exhibits gone, their were no copies.

144a. Esquilan turned fans on that caused excesive noise that made plaintiff lose sleep.

145. Jovanovic, Goodwin, Akturk, Esquilan subjected plaintiff to a racially hostile environment by pervasive racial epithets directed against him.

146. Akturk destroyed and stole plaintiff's property including clearly marked legal mail, pictures on various days.

146a. Goodwin destroyed and stole plaintiffs property including clearly marked legal mail, pictures on various days.

147. kucinski retaliated against plaintiff by having his lights on 24/7 denying him property, hygiene items, having him subjected to a dirty cell including toilet with feces crusted inside (ping pong) toilet.

148. Plaintiff was transferred to double-lock, two man cell after he was discharged from infirmary, plaintiff was initially in a single man cell and never requested double lock.

149. Double-lock (2 man to a cell) is regularly used as punishment for prisoners who complain.

150. Upon information and belief officers just have to make a call to get it done.

**CAUSE OF ACTION VI**

**UNITED STATES REHABILITATION ACT AND/OR AMERICAN WITH DISABILITIES ACT**

151. Plaintiff incorporates paragraphs 1 through 149 as though they were stated fully herein.

152. NJSP violated the Rehabilitation Act And or Americans with Disabilities Act by having knowledge that a federally protected right is substantially likely to be violated. NJSP did'nt properly accomadate him having authority position. Plaintiff filed a ADA inquiry and grievance previously (See Exhibits D-5, D-5a, D-6, D-7)

153. Plaintiff is of a small class of prisoners that have a serious back condition, amd take pain medication. NJSP discriminated against plaintiff by reason of his disability by failing to act to properly house plaintiff for his disability.

154. Plaintiff has lumbar stenosis and qualifies as being disabled.

155. NJSP receives federal funding under the Federal Coronavirus Aid and Economic Security Act (CARES). NJSP also receives federal funding under the Federal Emergency Management Agency. NJSP receives federal funding under the Prison Rape Elimination Act(PREA).

**CAUSE OF ACTION VII**

**42 U.S.C. § 1985 (2)**

156. Plaintiff incorporates paragraphs 1 through 155 as though

they were stated fully hererin.

157. Defendants each had personal knowledge and/or aquiescence relating to conspiracy.

158. Plaintiff filed lawsuits on 10/19/19 DURHAM V. DAVIS et al, case No. 3:19-cv-19126, DURHAM V. JOHN OR JANE DOE, DURHAM V. KELLEY etal

159. Goodwin harassed, retaliated, destroyed and stole clearly marked legal mail. Also on various days directed racial hostility at plaintiff. (See Exhibits A, A-1, A-2, A-4, C)

160. Godwin has a pattern and practice of this behavior (See Exhibits A-6,A, C-3)

161. Jovanovic racially harassed, conspired and destroyed, stole plaintiffs clearly marked legal mail and property. Jovanovic denied plaintiff fresh drinking water, refused to process his clearly marked legal mail. Denied plaintiff exterminator services, strip searched plaintiff for no justifiable reason. Denied plaintiff medical assistance that led to injury. Jovanovic denied plaintiff warmth by having heat off and windows open. Jovanovic denied plaintiff sleep by having large metal fans on near his cell. (See Exhibits A-4, A-5, B-3, C, C-1, C-2, C-2a, C-3.

162. Jovanovic has a patttern and practice of this behavior.(See Exhibits A-8, C-4)

163. Akturk conspired to violate plaintiff's rights by destroying stealing plaintiffs clearly marked legal mail. On various days Akturk used racial hostility towards plaintiff. Akturk also denied plaintiff exterminator services, and didnt intervene

on days plaintiff was violated by other defendants. Akturk denied plaintiff medical assistance.(See Facts #14)

164. Akturk has a pattern and practice of this behavior. (See Exhibits A-11, C-3, C-5)

165. All previous mentioned defendants conspired to deter plaintiff from testifying truthfully in Federal/State Court by threat and intimidation. The discriminatory actions or omissions to violate the equal protection of law was based on plaintiff's race, plaintiff is a African American.

**CAUSE OF ACTION VIII**

**42 U.S.C. § 1986**

166. Plaintiff incorporates paragraphs 1 through 165 as though they were fully herein.

167. Jovanovic, Goodwin, Akturk, Eaquilan, Kucinski had knowledge of a conspiracy and did nothing to stop it.

168. Goodwin and Jovanovic knew of conspiracy and did nothing to prevent it. Plaintiff was denied warmth, clearly marked legal mail, photos, property destroyed(See Exhibits A-1, A-2, A-4, A-5, C,)

169. Akturk knew of a conspiracy and did nothing to prevent it, plaintiff was denied warmth for months. (See Exhibit A-5)

170. Jovanovic and Akturk denied plaintiff medical assistance which led to plaintiff being injured.

**CAUSE OF ACTION VIIII**

**EMERGENCY AID NOT GIVEN OR NOT PROPERLY GIVEN**

171. Plaintiff incorporates paragraphs 1 through 170 as though they were stated fully herein.

172. Jovanovic and Akturk denied plaintiff emergency aid while on 2 left housing unit. They had a duty to provide this being correctional officers.

173. As a direct and proximate result of their inactions plaintiff was seriiously injured.

173. Plaintiff did'nt receive medical assistance until second shift from different correctional staff which was hours later.

174. They violated the New Jersey state tort law of Emergency Aid Not Given Or Not Properly Given.

**CAUSE OF ACTION X**

**INTENTIONAL OR MALICIOUS HARM TO ANOTHER**

175. Plaintiff repeats and alleges paragraphs 1 to 174 as though they were stated fully therein.

176. Jovanovic, Goodwin, Akturk, Esquilan had heat turned off and windows open during extremely cold temperatures while plaintiff was on 2 left this was done intentionally and maliciously, which caused plaintiff to be cold and shiver and wake up shivering and lose sleep.

177. Jovanovic, Goodwin, Akturk intentionally and maliciously ransacked plaintiff's cell destroying and stealing clearly marked legal mail, photos of family/friends (deceased relative also) and placing some shredded property in the toilet.

178. Jovanovic and Goodwin strip searced plaintiff without any justification.

179. Jovanovic denied plaintiff access to fresh drinking water.

180. Kucinski denied plaintiff sleep by having light on 24/7, access to a clean cell, cell was filthy with feces crusted in

toilet (ping pong). Plaintiff denied toothpaste, toothbrush and other hygiene items and property.

181. Jovanovic and Akturk denied Plaintiff access to medical assistance. Plaintiff fell in cell due to extreme pain in his lower back that cascaded down to his legs and fell in water that had urine and feces in it, plaintiff later fell again and was injured.

181a. Esquilan, Goodwin Akturk had large metal fans on that made excessive noise that caused plaintiff to sleep for months.

182. Akturk, jovanovic, Goodwin refused plaintiff access to exterminator services for excess vermin in plaintiff's cell that caused him to lose sleep and be extremely distressed.

183. These actsby Defendants were intentional and maliciou s without justification and proximate.

**CAUSE OF ACTION XI**

**AIDING THE COMMISSION OF TORT**

184. Plaintiff repeats and alleges paragraphs 1 through 183 as though they were stated fully therein.

185. Jovanovic, Goodwin, Akturk, Esquilan, Kucinski actively participated, aided, encouraged, in plaintiff losing sleep, warmth in a campaign of harassment.

186. Jovanovic Goodwin Akturk, ransacked plaintiff;s cell destroying and stealing his property.

187. Jovanovic denied plaintiff access to fresh drinking water approximately two weeks while on 2 left.

188. Jovanovic, Goodwin, Akturk denied plaintiff access to exterminator services for excessive vermin while on 2 left.

189. Jovanovic and Akturk denied plaintiff access to medical assistance which led to plaintiff being injured.

190. Jovanovic, Godwin Akturk, Esquilan had large metal fans on while temperature was extremely cold and windows open which caused plaintiff to lose sleep, the fans made excessice noise.

191. Kucinski denied plaintiff sleep by having lights left on 24/7 in infirmary and allowing plaintiff to be in a filthy cell with feces crusted in toilet and feces coming in from adjacent cell (ping pong) toilet. Kucinski denied plaintiff access to property (e.g. toothpaste, toothbrush). Kucinski was aware of plaintiff writing up c.o.'s and acquiesced.

## CAUSE OF ACTION XII

## EMOTIONAL DISTRESS INTENTIONALLY INFLICTED

192. Plaintiff repeats and alleges paragraphs 1 through 191 as though same has been stated therein.

193. Jovanovic, Goodwin, Akturk, Esquilan caused plaintiff to lose sleep and warmth for months this caused great distress.

194. Kucinski caused plaintiff to lose sleep several days in infirmary by leaving lights on 24/7 denying him access to a clean cell, cell had feces crusted in toilet (pin pong toilet). Kucinki denied plaintiff property and hygiene items.

195. Jovcanovic, Goodwin, Akturk, denied plaintiff access to exterminatior services for excess vermin in his cell that caused him to lose sleep and be greatly depressed. (plaintiff requested exterminator services for months)

196. Jovanovic denied plaintiff access to fresh drinking water for approximately two weeks.

197. Jovanovic, Goodwin, Akturk ransacked plaintiff's cell stealing and destoying property (e.g. family photos and friend photos and clearly marked legal mail, shredding and placing in toilet bowl.

198. Jovanovic and Akturk denied plaintiff access to medical assistance which led to plaintiff being seriously injured and placed in infirmary several days.

199. While on 2 left plaintiff was subjected to pervasive racial hostility by being called racial epithets and racially discriminated against by Jovanovic, Goodwin, Akturk.

**CAUSE OF ACTION XIII**

**EMOTIONAL DISTRESS NEGLIGENTLY INFLICTED**

200. Plaintiff repeats and alleges paragraphs 1 through 199 as though they were stated fully therein.

201. Jovanovic, Goodwin, Akturk denied plaintiff warmth and sleep while on 2 left unit for months.

202. Jovanovic denied plaintiff access to fresh drinking water.

203. Jovanovic, Goodwin, Akturk ransacked plaintiff's cell destroying and stealing clearly marked legal mail, photos and placing property shredded in toilet.

204. Jovanovic refused to process plaintiff's clearly marked legal mail on various dates.

205. Jovanovic denied plaintiff access to yard, jpay kiosk for months.

206. Jovanovic and Goodwin strip searched plaintiff in cell for no justifiable reason.

207. Jovanovic, Goodwin, Akturk denied plaintiff access to

exterminator services for excess vermin in his cell.

208. Esquilan, Jovanovic, Goodwin, Akturk had large metal fans on that made excessive noise that caused plaintiff to lose sleep over a period of months.

209. Jovanovic and Akturk denied plaintiff medical assistance that led to plaintiff being injured.

210. Plaintiff was racially discriminated and racial epithets were directed towards him by Jovanovic, Goodwin, Akturk and Esquilan.

## PRAYER FOR RELIEF

211. WHEREFORE, Plaintiff requests that the court grant the following relief:

A. Issue a declatory judgment stating Defendants violated Plaintiff's Constitutional Right's under the United States. And Defendants violated Plaintiff's state rights under New Jersey state tort law. That Defendant NJSP violated the United States Rehabilitation Act/And or Americans With Disabilities Act.

B. Award compensatory damages in the following amounts:

1. $100,000; one hundred thousand dollars jointly and severally against all defendants.

C. Award punitive damages in the following amounts:

$100,000; one hundred thousand dollars jointly and severally against all defendants.

## DEMAND FOR JURY TRIAL

212. Pursuant to Fed Civ. P. 38 (b) (1), Plaintiff demands trial by jury regarding any and all factual issues.

213. Plaintiff seeks recovery of all costs in this suit.

214. Plaintiff seeks any additional relief this Court deems just proper and equitable.

Respectfully Submitted,

Dated:

Januaray 20th,2022

Tremayne Durham
#647007/ OS01613467
NJSP
P.O. Box 861
Trenton, NJ 08625

**CERTIFICATE OF SERVICE**

I, Tremayne Durham, Plaintiff, Pro-Se, do hereby declare and certify that I have placed for mailing a copy of amended complaint 3:21-cv-16723, and Exhibits A through G-1, and Certificate of Service, to be mailed to the Clerk of the Court. Whose address is: United States District Court, 402 E. State Street, Trenton, NJ 08608. On this 20th day of January, 2022 by placing the above said documents in the hands of the officerin charge of the mail on the cell block 1 Right for which a postage remit was submitted for first class mailing and signed by the officer whose name appears on the postage remit.

Respectfully Submitted,

Tremayne Durham

DATED: January,20th, 2022

#647007/ OS01613467
NJSP